IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MANUEL LOPEZ, JR., on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>HALSTED FINANCIAL SERVICES, LLC, FIRST FINANCIAL INVESTMENTS FUND HOLDINGS, LLC, and FIRST FINANCIAL PORTFOLIO SERVICES, LLC,<br><br>Defendants.<br><br>FIRST FINANCIAL INVESTMENTS FUND HOLDINGS, LLC, and FIRST FINANCIAL PORTFOLIO SERVICES, LLC,<br><br>Cross Claim Plaintiffs,<br><br>v.<br><br>HALSTED FINANCIAL SERVICES, LLC,<br><br>Cross Claim Defendant. | 16 C 2539<br><br>Judge John Z. Lee |

**ORDER**

Manuel C. Lopez, Jr. ("Lopez") sued, among others, Halsted Financial Services, LLC ("Halsted"), First Financial Portfolio Services, LLC ("First Financial"), and First Financial Investment Fund Holdings, LLC ("FFIFH") under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. After Lopez settled all of his claims, First Financial and FFIFH filed a cross claim against Halsted seeking indemnification. First Financial and FFIFH now move for

summary judgment on their cross claim. For the reasons provided below, the motion is granted in part and denied in part.

### Factual Background and Procedural History[1]

First Financial purchased Lopez's underlying debt from IASIS Healthcare Corp. ("IASIS")—the original creditor—in early January 2014. Def.'s LR 56.1(b)(3)(C) Stmt. ¶ 2, ECF No. 171.[2] First Financial then assigned Lopez's account to Stoneleigh Recovery Associates, LLC ("Stoneleigh"). *Id.* ¶ 3.

On January 21, 2014, a Stoneleigh representative called Lopez and recorded in Stoneleigh's call log that Lopez "said he was a victim of identity fraud." *Id.* ¶ 5 (citing Def.'s Ex., Glass Decl., Ex. 1c, Stoneleigh Call Log ("Call Log"), ECF No. 173). First Financial and FFIFH object to this last point. *See* Pls.' Resp. Def.'s LR 56.1(b)(3)(C) Stmt. ¶ 5, ECF No. 182; Def.'s Ex. 1c, Stoneleigh Call Log, ECF No. 173-3.

Five months later, in June 2015, First Financial recalled Lopez's account from Stoneleigh and assigned it to Halsted. *Id.* ¶ 7. First Financial did not disclose to Halsted that Lopez's debt may have been illegitimate, although it is unclear from the record whether the debt was, in fact, illegitimate, or whether Stoneleigh had relayed the call-log information to First Financial. *Id.* ¶ 8.

Halsted made its first of many attempts to contact Lopez on June 4, 2015. *Id.* ¶ 10. On June 16, one of Halsted's agents reached Lopez and noted in a call log that Lopez "will fax us [a] police report saying he had his identity stolen." Def.'s Ex., Navanandan Decl., Ex. 1, Halsted Call Log, ECF No. 173-4.

---

[1] The following facts are undisputed unless otherwise noted.

[2] For brevity's sake, when citing court documents, the Court refers to Cross Claim Plaintiffs First Financial and FFIH as "Pls." and Cross Claim Defendant Halsted as "Def."

2

Lopez filed a putative class action suit shortly thereafter, alleging that Halsted had violated the TCPA by inundating him with pre-recorded, auto-dialed telephone calls without first obtaining his consent. Compl., ECF No. 1. Lopez later amended his complaint to include First Financial and FFIFH as Defendants. Am. Compl., ECF No. 51. Lopez's claims against all defendants were settled in March 2018. Order of 3/22/18, ECF No. 155.

All that remains in this litigation is First Financial and FFIFH's cross claim against Halsted seeking indemnification. In this regard, First Financial entered into an Agency Collection and Servicing Agreement ("Agreement") with Halsted (referred to in the Agreement as "AGENCY") on April 10, 2014. Pls.' LR 56.1(a)(3) Stmt. ¶ 2, ECF No. 165; Pls.' Ex. A, Agreement, ECF No. 165-1. The Agreement contained an indemnification provision, which provides:

> A: <u>AGENCY's Obligation</u>: AGENCY shall defend, indemnify and hold FFPS, including its Client(s), Portfolio Owner(s), affiliates and their directors, managers, officers, employees, harmless from and against all claims, actions, demands, liabilities, damages, costs, losses and expenses (including reasonable attorneys' fees, court costs, and costs of other professionals, whether suit is instituted or not) arising out of or relating to: (1) the acts, errors or omissions of AGENCY, its employees, contractors and agents, (2) any violation of applicable laws, rules and regulations, (3) any breach of this Agreement by AGENCY, (4) any amounts or expenses due to FFPS for services, expenses, damages or costs incurred or suffered by FFPS, and (5) any proceeding instituted by any person based on an allegation or assertion which, if true, would indicate the existence of any of the foregoing circumstances.
>
> B: <u>Miscellaneous Obligations</u>: FFPS and AGENCY agree to promptly notify the other of any claim, demand, suit or threat of suit (1) which that party becomes aware of for (2) that may reasonably give rise to a right or obligation of indemnification under this Agreement.
>
> C: <u>Survival</u>: This section shall survive termination of this Agreement.

Agreement ¶ 16.

First Financial and FFIFH made a demand on Halsted to defend and indemnify it for Lopez's lawsuit on September 19, 2016. Pls.' LR 56.1(a)(3) Stmt. ¶ 7. When Halsted failed to respond to the demand, First Financial and FFIFH filed a cross-claim against Halsted for indemnification. *Id.* ¶¶ 8–9.

In a previous order, the Court held that the Agreement required Halsted to defend, indemnify, and hold harmless First Financial for the attorneys' fees and costs that First Financial was forced to incur in order to defend itself in the proceeding instituted by Lopez. *See* Order of 12/11/18, ECF No. 168. The Court also held that the Agreement required Halsted to hold First Financial harmless regarding attorneys' fees and costs for its action against Halsted in the event that First Financial proved that Halsted breached the agreement. *See id.* Now, First Financial seeks to recover the attorneys' fees and costs that it expended to prosecute its cross-claim against Halsted.

## **Legal Standard**

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling on a motion for summary judgment, a court must "view the facts in the light most favorable to the nonmoving party." *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2017 (2014). A district court gives the nonmoving party "the benefit of conflicts in the evidence and reasonable inferences that could be drawn from it." *Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 794 (7th Cir. 2013). The Court must not make credibility determinations or weigh conflicting evidence. *McCann v. Iroquois Mem'l Hosp.*, 622 F.3d 745, 752 (7th Cir. 2010). "The judge must ask whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. The existence of a mere scintilla of evidence supporting a plaintiff's position is insufficient; there must be evidence

4

on which a jury could reasonably find for the plaintiff." *Insolia v. Phillip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000).

## Analysis

First Financial and FFIFH have moved for summary judgment on their indemnification claim against Halsted. Halsted argues that summary judgment should be denied for two reasons. First, Halsted argues that summary judgment should be denied as to FFIFH because Halsted has not proved that FFIFH is First Financial's "affiliate" as required under the Agreement. Second, Halsted contends that it has raised a triable issue as to whether First Financial and FFIFH are entitled to enforce the indemnification provision in the Agreement.

**II.  FFIFH**

As to FFIFH, the Agreement provides in pertinent part that Halsted "shall . . . indemnify and hold FFPS, including its . . . affiliates . . . harmless from and against all claims, actions, demands, liabilities, damages, costs, losses and expenses (including reasonable attorneys' fees, court costs . . . ) arising out of or relating to . . . any proceeding instituted by any person based on an allegation [of a violation of applicable laws, and] any breach of this Agreement by [Halsted]." Agreement ¶ 16.A.

Halsted contends that the movants have not demonstrated that FFIFH is an "affiliate" of First Financial. The Court agrees. As the movants, First Financial and FFIFH bear the burden of establishing that FFIFH is an affiliate of First Financial. To this end, First Financial and FFIFH rely on an affidavit filed by one of their attorneys. *See* Pls.' Ex. B, Strickler Aff. ¶ 2. But this affidavit says nothing about FFIFH's relationship with First Financial.

First Financial and FFIFH also rely on a one-page document that they attached to their reply brief called "Policies and Procedures," which lists FFIFH as "an affiliated client investor

5

group." *See* ECF No. 181-2 at 25. But there is no expostulation as to what this means. And, in any event, First Financial does not cite to this exhibit in its statements of fact.

For these reasons, FFIFH's motion for summary judgment as to its indemnification claim against Halsted is denied.

## II. Whether Halsted May Avoid Indemnification under the Agreement

To oppose First Financial's efforts to obtain summary judgment, Halsted offers a number of theories as to why it should not be held to the terms of the Agreement.

### A. Express and Implied Contractual Theories

First, Halsted points out that the Agreement obligates First Financial to place "Accounts" with Halsted, and "Accounts" are defined as "outstanding accounts receivables." Agreement at 1. As a result, Halsted argues, First Financial initially breached the Agreement by placing Lopez's account with Halsted, even though it knew that Lopez was the victim of identity theft and did not owe any money. To support its position, Halsted points to the Black's Law Dictionary, which defines "outstanding" as being "unpaid; uncollected" and "account receivable" as being "an account reflecting a balance owed by a debtor; a debt owed by a customer to an enterprise for goods or services." *Black's Law Dictionary* (10th ed. 2014).

But the plain language of the Agreement contradicts Halsted's position. Under it, First Financial "may, in its sole and absolute discretion, place Accounts . . . . with [Halsted] for collection" and "is not required to place any set number or types of Accounts with [Halsted]." Agreement ¶ 1.A.(i). Moreover, the Agreement acknowledges the possibility that an assignment might be placed in error and allows First Financial to recall any account at its sole discretion. *Id.* ¶ 15, 22.A. Given this, the Court holds that First Financial did not breach the Agreement when it first placed Lopez's account with Halsted. *See Lagen v. United Cont'l Holdings, Inc.*, 774 F.3d

1124, 1130 (7th Cir. 2014) (when interpreting a contract, courts must look to "objective expressions of intent and agreement"); *Primary Invs., LLC v. Wee Tender Care III, Inc.*, 746 S.E.2d 823, 826 (Ga. Ct. App. 2013) (a court must provide an interpretation that "gives meaning and effect to all the terms of the contract over [an interpretation] which nullifies and renders meaningless a part of the document").[3]

Furthermore, Halsted has not offered any admissible evidence to question the legitimacy of Lopez's debt. Halsted does point to a call log of a prior debt collector, Stoneleigh, but provides no foundation to establish that the call log was a record of a regularly conducted activity (*i.e.*, a "business record") under Fed. R. Evid. 803(6). Nor does Halsted offer any evidence that First Financial knew of the call log or that it had the right to control the manner and method in which Stoneleigh's work was performed. *See Murphy v. Blue Bird Body Co.*, 429 S.E.2d 530, 532 (Ga. Ct. App. 1993); *Lewis v. Mt. Greenwood Bank*, 414 N.E.2d 1079, 1084 (Ill. App. Ct. 1980). For these reasons, Halsted has not presented any evidence from which a reasonable jury could conclude that First Financial had breached the Agreement based on Stoneleigh's call log alone.

Next, Halsted argues that summary judgment should be denied because there is a triable issue regarding whether First Financial exercised its discretion in good faith when placing Lopez's account with Halsted. "The requirement that a party exercise good faith and honest judgment, even where the contractual language grants the party discretion, arises from the implied duty of good faith and fair dealing imposed upon virtually every contract under Georgia law." *Capital Health Mgmt. Grp. v. Hartley*, 689 S.E.2d 107, 112 (Ga. Ct. App. 2009); *see Spadoni v. United*

---

[3] Though the Agreement provides Georgia law controls, both parties have cited to both Georgia and Illinois law to support their positions. Because the relevant law appears to be similar, the Court will reference the cases relied upon by the parties. *See, e.g.*, *Global Cash Network, Inc. v. Worldpay, US, Inc.*, 148 F. Supp. 3d 716, 722 (N.D. Ill. 2015) (concluding that "no choice-of-law analysis has to be undertaken if courts in [both states] would arrive at the same destination").

*Airlines, Inc.*, 47 N.E.3d 1152, 1154 (Ill. App. Ct. 2015) (Illinois law). But, because Halsted has not created a genuine issue of fact as to whether there has been a breach of the express terms of the Agreement, Halsted's argument based on a breach of an implied duty of good faith and fair dealing likewise fails. *See Ceasar v. Wells Fargo Bank, N.A.*, 744 S.E.2d 369, 374 (Ga. Ct. App. 2013); *see also Anderson v. Burton Assocs., Ltd.*, 578 N.E.2d 199, 203 (Ill. App. Ct. 1991).

### B. Affirmative Defenses

In addition, Halsted argues that First Financial's failure to disclose the problems with Lopez's account prior to assigning it to Halsted constitutes both a waiver and contributory negligence. Finally, Halsted contends that enforcement of the indemnification provision would contravene public policy.

Beyond citing cases defining the legal concepts of waiver and contributory negligence generally, Halsted provides no factual support or argument to support either affirmative defense. A waiver results when one party intentionally relinquishes a known right and conveys to the other party that it will not seek legal enforcement following related non-performance. *Vrastsinas Constr. Co. v. Triad Drywall, LLC*, 739 S.E.2d 493, 496 (Ga. Ct. App. 2013); *see People v. Lesley*, 123 N.E.3d 1060, 1069 (Ill. 2018). Though a waiver may be implied by conduct, such conduct must be "clear and unmistakable" by the party alleged to have created the waiver. *Vrastsinas*, 739 S.E.2d at 496; *see Pielet v. Hiffman*, 948 N.E.2d 87, 96 (Ill. App. Ct. 2011).

Halsted has not pointed to any evidence to support a waiver—either express or implied. As indicated, Halsted has not provided any admissible evidence that First Financial was aware of Stoneleigh's call-log information or that the debt was not owed by Lopez. Furthermore, there is nothing in the record indicating that First Financial demonstrated any intent to waive Halsted's indemnification obligation to it. As a result, this argument fails.

8

As for Halsted's contributory negligence defense, the argument is puzzling because "there is no contract doctrine of contributory or comparative negligence." *Outboard Marine Corp. v. Babcock Indus., Inc.*, 106 F.3d 182, 184 (7th Cir. 1997); *see Lawyers Title Ins. Corp. v. New Freedom Mortg. Corp.*, 645 S.E.2d 536, 543 (Ga. Ct. App. 2007) ("[P]rinciples of contributory and comparative negligence generally have no application in contract disputes."). Because Halsted has not pointed to any authority to suggest otherwise, this theory too fails.

Finally, Halsted contends that indemnification clauses in cases such as this are void as against public policy. In support, Halsted relies solely on Georgia's anti-indemnification statute that prohibits indemnification against negligently caused claims arising from "the construction, alteration, repair, or maintenance of a building structure." Ga. Code Ann. § 13-8-2(b). But this statute is clearly inapplicable to the facts of this case.

The Court previously ruled that the Agreement requires Halsted to indemnify First Financial for the costs it has expended, including attorneys' fees and costs, to defend itself against Lopez's claims. *See* Order of 12/11/18. The Court also previously ruled that the Agreement requires Halsted to hold First Financial harmless regarding attorneys' fees and costs for its action against Halsted in the event that First Financial proved that Halsted breached the Agreement. *See id.* The Court now holds that Halsted breached its Agreement with First Financial when it refused to defend and indemnify First Financial from Lopez's lawsuit, Pls.' LR 56.1(a)(3) Stmt. ¶¶ 7–11, and that Halsted must indemnify First Financial for the expenses, including attorneys' fees and costs, incurred to pursue its cross-claim against Halsted as a result of Halsted's breach. *See* Agreement ¶ 16.A.

## **Conclusion**

For the reasons provided herein, First Financial and FFIFH's motion for summary judgment is granted as to First Financial and denied with respect to FFIFH [166]. FFIFH must notify the Court whether it will continue to pursue its cross claim at the next status hearing on July 30, 2019, at 9:00 a.m. The Court will set an expedited date for the filing of a final pretrial order, a final pretrial conference, and a jury trial on any issue that remains.

**IT IS SO ORDERED.**     ENTER:  7/16/19

_____
**JOHN Z. LEE**
**United States District Judge**